**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

JANICE CLARK                                                              PLAINTIFF

v.                                    NO. 4:09CV00877-GTE

TRANSAMERICA LIFE INSURANCE
COMPANY and AEGON USA, INC.

                                                                         DEFENDANT

---

**TRANSAMERICA LIFE INSURANCE COMPANY'S**
**MOTION FOR PROTECTIVE ORDER FROM SUBPOENAS**
**DIRECTED TO NON-PARTIES J. ANGELA ABLES AND KERR, IRVINE,**
**RHODES & ABLES, P.C. AND INCORPORATED BRIEF IN SUPPORT**

---

Markham R. Leventhal                     John K. Baker
Farrokh Jhabvala (*Pro Hac Vice*)        Arkansas Bar No. 97024
**JORDEN BURT LLP**                      **MITCHELL, WILLIAMS, SELIG,**
777 Brickell Avenue, Suite 500           **GATES & WOODYARD, P.L.L.C.**
Miami, Florida  33131                    425 West Capitol Avenue, Suite 1800
Telephone:  (305) 371-2600               Little Rock, Arkansas  72201
Facsimile:  (305) 372-9928               Telephone:  (501) 688-8800
Email:  ml@jordenusa.com                 Facsimile:  (501) 688-8807
Email:  fj@jordenusa.com                 Email:  jbaker@mwlaw.com

*Attorneys for Defendant*
*Transamerica Life Insurance Company*

August 16, 2010

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES...................................................................................ii

INTRODUCTION ............................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND................................. 2

      A.      The Subpoenas .......................................................................... 3

      B.      Plaintiff's Counsel Served Identical Subpoenas In *Lindley* ......................... 5

      C.      The Non-Parties' Limited Involvement With The Oklahoma Insurance Department.................................................................... 7

ARGUMENT....................................................................................................... 8

I.      LEGAL STANDARD....................................................................................8

II.     THE SUBPOENAS SEEK ENTIRELY IRRELEVANT DOCUMENTS AND INFORMATION ..............................................................................9

      A.      Documents And Information Relating To The Oklahoma Insurance Department And Oklahoma Policy Forms Are Not Relevant To This Case ................................................................. 9

      B.      Another Federal District Court Has Deemed The Basis For The Subpoenas Speculative.......................................................... 11

III.    THE SUBPOENAS IMPROPERLY SEEK PRIVILEGED MATERIAL.........................13

IV.    PLAINTIFF HAS NOT SOUGHT TO OBTAIN THE INFORMATION BY LESS INTRUSIVE MEANS.....................................................................15

CONCLUSION ................................................................................................. 17

CERTIFICATION OF COUNSEL .................................................................... 17

## TABLE OF AUTHORITIES

*Page*

**Cases**

*Auto-Owners Insurance Co. v. Southeast Floating Docks, Inc.*,
    231 F.R.D. 426 (M.D. Fla. 2005) ........................................................................... 9

*Baker v. General Motors Corp.*,
    209 F.3d 1051 (8th Cir. 2000) ............................................................................. 13

*Byrd v. State*,
    929 S.W.2d 151 (Ark. 1996) ............................................................................... 14

*G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*,
    2007 WL 119148 (D. Nev. Jan. 9, 2007) ......................................................... 9, 15

*Haworth, Inc. v. Herman Miller, Inc.*,
    998 F.2d 975 (Fed. Cir. 1993) ............................................................................. 15

*Mayes v. City of Oak Park*,
    2007 WL 187941 (E.D. Mich. Jan. 22, 2007) ..................................................... 10

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ........................................................................... 8

*Shelton v. American Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ............................................................................. 14

*Transcor, Inc. v. Furney Charters, Inc.*,
    212 F.R.D. 588 (D. Kan. 2003) ............................................................................. 8

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ........................................................................................... 14

**Statutes**

ARK. CODE ANN. § 16-41-502........................................................................................ 13

OKLA. ADMIN. CODE § 365:1-1-3 .................................................................................. 10

OKLA. STAT. ANN. tit. 36, § 3651................................................................................... 7

## <u>TABLE OF AUTHORITIES</u>
(continued)

*<u>Page</u>*

TENN. CODE ANN. § 56-7-101 ........................................................................................... 10

**<u>Other Authorities</u>**

Fed. R. Civ. P. 26................................................................................................... 1, 8, 13, 15

Fed. R. Civ. P. 45............................................................................................................... 1

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Transamerica Life Insurance Company ("Transamerica") respectfully moves this Court for a protective order from two subpoenas (the "Subpoenas") directed at non-parties J. Angela Ables and Kerr, Irvine, Rhodes & Ables, P.C.[1]   As explained below, a protective order should issue because the Subpoenas seek to harass outside counsel, and they seek the disclosure of privileged information and documents that are entirely irrelevant to this action.

## INTRODUCTION

On August 4, 2010, plaintiff notified Transamerica of its intent to serve subpoenas on non-parties J. Angela Ables ("Ables") and Kerr, Irvine, Rhodes & Ables, P.C. ("Kerr Irvine") (collectively, the "Non-Parties").  Ables and Kerr Irvine, respectively, are an outside attorney and law firm that represented Life Investors Insurance Company of America ("Life Investors")[2] in 2006 in connection with communications with the Oklahoma Insurance Department regarding certain Oklahoma insurance policy forms.  Doc. 32 and 33.  The Subpoenas, which were issued under the subpoena power of the Western District of Oklahoma, command Ables and Kerr Irvine to appear for deposition and produce documents on August 19, 2010 in Oklahoma City, Oklahoma.  *Id.*[3]

A protective order is necessary because the Subpoenas seek the disclosure of information and documents regarding Oklahoma policy forms and filings that are entirely irrelevant to this action.  Counsel for plaintiff served identical subpoenas in *Lindley v. Life Investors Insurance*

---

[1] Copies of the Subpoenas directed to J. Angela Ables and Kerr, Irvine, Rhodes & Ables, P.C. are in the record at Doc. 32 and 33.

[2] Life Investors was an affiliate that merged into Transamerica effective October 2, 2008.

[3] Both Transamerica and the Non-Parties intend to file motions to quash the Subpoenas with the issuing court.

*Company of America*, a putative Oklahoma class action involving a dispute over cancer insurance policies and "actual charges."[4]   In that case, the plaintiff sought the <u>identical</u> information sought by the Subpoenas here.  The *Lindley* court deemed the theory upon which the plaintiff premised his need for the information sought by the subpoenas "highly speculative." *See Lindley*, D.E 342 (Order) at 8.  The discovery is even more inappropriate in this action because plaintiff is a Tennessee resident and owns a Tennessee-issued cancer policy. Communications with the Oklahoma Insurance Department regarding Oklahoma policies and forms have absolutely no bearing on the claims asserted in this action, and the Subpoenas are designed merely to harass Transamerica and its outside counsel.  Because plaintiff's counsel was unable to obtain the requested documents and information in *Lindley*, the Subpoenas here were served the day after the *Lindley* action was settled.[5]

A protective order should also be entered because the information and documents sought are protected from disclosure by the attorney-client and/or work product privileges, and the Subpoenas are designed to encroach upon the confidential, attorney-client relationship.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On November 14, 1985 plaintiff Janice Sue Clark, a Tennessee resident, applied to purchase a "Specified Disease" policy from Pacific Fidelity Life Insurance Company ("PFL

---

[4] *Lindley v. Life Investors Insurance Company of America*, Case No. 08-CV-379-CVE-PJC (N.D. Okla).  The plaintiff in *Lindley* was also represented by Tony Gould of Brown & Gould, PLLC.

[5] *See* Settlement Conference Report by Magistrate Judge T. Lane Wilson, entered August 3, 2010, advising litigation was settled.  *Lindley*, Doc. 435.  A copy of the Court's minute order is attached as Exhibit 1.

Life"), a predecessor of Transamerica.[6]   Plaintiff was issued policy number 0Y0778367 on Tennessee form SD5-1-485 with an effective date of November 14, 1985 (the "Policy"). Counterclaim ¶ 7, pg. 14 (Doc. 4).  Plaintiff's Policy was delivered in Tennessee, was issued on a policy form approved by the Tennessee Department of Commerce and Insurance ("Tennessee Department") on September 9, 1985, and is regulated by the Tennessee Department.  *See* Declaration of Stephen B. Gwin ¶ 5 (Doc. 17-5) ("Gwin Decl."); Doc. 25 (Order denying Plaintiff's Motion for Judgment on the Pleadings) at 8.  The Policy insures for certain "loss incurred" from cancer and other specified diseases.  While many of the benefits under the policy are expressed in fixed dollar amounts, some benefits are based upon the "actual charges" that must be paid for the covered services rendered.

Plaintiff complains that Transamerica breached the insurance contract after it updated its claim forms and "proof of loss" requirements, effective April 1, 2006, to ensure that it would receive the necessary information and documentation to accurately determine the "actual charges" being incurred and paid to the medical provider.[7]

A.     The Subpoenas

Rather than seek discovery that is relevant to her claims,[8] Clark served non-party

---

[6] PFL Life merged with Transamerica effective January 1, 1991.  Effective March 1, 2001, PFL Life changed its name to Transamerica.

[7] *See* Complaint ¶¶ 33-44 (Doc. 2).  Contrary to plaintiff's allegations, Transamerica's updated claim forms and "proof of loss" requirements went into effect for Clark on May 1, 2006. *See* Declaration of James A. Byrne ¶ 5 (Doc. 17-6).

[8] On June 29, 2010, Transamerica served its initial disclosures pursuant to Rule 26(a)(1) and produced more than 300 pages of documents.  Transamerica also propounded interrogatories, requests for production, and requests for admissions to Clark on July 14, 2010. Plaintiff, however, has not served her Rule 26(a)(1) initial disclosures or served any discovery on Transamerica.

Subpoenas seeking irrelevant and privileged communications and information regarding

Oklahoma policy forms and filings made by a different entity.  Both Subpoenas include the

following document requests:

1.　　Documents evidencing, summarizing, memorializing, recording, describing or comprising the **Actual Charges Agreement**.

2.　　Documents evidencing, summarizing, memorializing, recording, scheduling or comprising any meeting or communication between the **Department**, including the **Commissioner** and **Bankers United, Life Investors**, **Transamerica** and/or **Aegon** (or You on their behalf) regarding the negotiation of the **Actual Charge Agreement** or other **Agreement** regarding the meaning of the phrase "actual charges" within any specified disease insurance policy.

3.　　Documents evidencing, summarizing, memorializing, recording, scheduling or comprising any meeting or communication between the **Department**, including the **Commissioner** and **Bankers United, Life Investors**, **Transamerica** and/or **Aegon** (or You on their behalf) regarding the meaning, construction or interpretation of the phrases "actual charge(s)" or "expense(s) incurred" as used in a specified disease insurance policy.

4.　　Documents evidencing, summarizing, memorializing, recording, scheduling or comprising meetings between the **Department** including the **Commissioner** and **Bankers United, Life Investors**, **Transamerica** and/or **Aegon** (or You in their behalf) regarding the failure of **Bankers United** to issue its policyholders an amendatory rider defining the phrase "actual charges."

Doc. 32 and 33 (emphasis in original).  The Subpoenas also specify the following topics for

examination:

1.　　The facts and circumstances surrounding the **Actual Charges Agreement** or any other **Agreement** between the **Department**, including the **Commissioner** and **Bankers United, Life Investors**, **Transamerica** and/or **Aegon** (or you on their behalf) regarding the meaning of the phrase "actual charges" within any specified disease insurance policy.

2.　　The terms, conditions and substance of the **Actual Charges Agreement** or any other **Agreement** between the **Department**, including the **Commissioner** and **Bankers United, Life Investors**, **Transamerica**

-4-

and/or **Aegon** (or you on their behalf) regarding the meaning of the phrase "actual charges" within any specified disease insurance policy.

3.   **Communications** between the **Department**, including the **Commissioner** and **Bankers United, Life Investors**, **Transamerica** and/or **Aegon** (or you on their behalf) regarding the meaning of the phrase "actual charges" within any specified disease insurance policy.

4.   The existence, location or destruction of any of the Documents identified on **Exhibit "A"** attached hereto, including the substance and content of any such Documents.

*Id.* (emphasis in original).

The Subpoenas seek documents and deposition testimony relating to communications with the Oklahoma Insurance Department and a vaguely defined "Actual Charges Agreement." *See* Doc. 32 and 33. Because counsel for Clark has twice served the same subpoenas in another action, Transamerica's counsel has learned that "Actual Charges Agreement" purports to refer to a non-existent agreement that plaintiff's counsel contends was entered into by Life Investors and the Oklahoma Insurance Department.[9]

**B.   Plaintiff's Counsel Served Identical Subpoenas In *Lindley***

In an apparent attempt to salvage his class action allegations, the plaintiff in *Lindley* sought the same discovery from Ables and Kerr Irvine to further an unsubstantiated theory that Life Investors had entered into a "global agreement" in 1998 with the Oklahoma Insurance Department to endorse all of its Oklahoma cancer policies with a definition of "actual charges."

---

[9] *See, e.g.*, Life Investors' Motion for Protective Order and to Quash Subpoenas Directed to Non-Parties J. Angela Ables and Kerr, Irvine, Rhodes & Ables, P.C. and Memorandum of Law in Support ("Life Investors' Motion to Quash"), at 7. Life Investors' Motion to Quash was filed in the Western District of Oklahoma, and is attached hereto as Exhibit 2. The subpoenas were briefed extensively in *Lindley v. Life Investors Ins. Co. of America*, Case No. 10-CV-495-CVE-PJC (W.D. Okla.) (miscellaneous proceeding on motions to quash the subpoenas) (Doc. 1, 3 & 19).

The alleged "agreement" was premised on a filing that was made by Bankers United Life Insurance Company ("Bankers United"),[10] a predecessor of Life Investors, with the Oklahoma Department.  In 1994, Bankers United began issuing cancer insurance policies in Oklahoma on policy form BPC01OK.  On March 2, 1998, Bankers United submitted a proposed filing to the Oklahoma Insurance Department seeking approval of new application, policy outline of coverage, and rider outline of coverage forms to be used with the BPC01OK policy.  In April 1998, the Oklahoma Insurance Department disapproved the filing and advised Bankers United that "there must be a definition in the policy that clearly indicates the actual charge is the amount billed for the treatment before any insurance discounts, other insurance payments, reductions or discounts of any kind."  Exhibit 2 at 10-11; *see also* Declaration of  J. Angela Ables ("Ables Decl.") ¶ 3, filed in *Lindley* and attached hereto as Exhibit 3.

On or about May 11, 1998, Bankers United resubmitted the three forms originally submitted on March 2, 1998, along with a new cover letter.  Bankers United attached a proposed amendatory endorsement AE-BAC-OK that, when issued, would define "actual charges" as required by the Oklahoma Department for the BPC01OK policy.[11]  The May 11, 1998 letter indicated that the endorsement was only intended to be included with the specific policy referenced.  Exhibit 2 at 11; *see also* Ables Decl. ¶ 3.

---

[10] Bankers United later merged with Life Investors on or about December 31, 2001.

[11] Bankers United understood that if the amendatory endorsement was not included with the resubmission, the application and outline of coverage forms would not be approved.  *See* Deposition of Stephen B. Gwin, April 1, 2010 (*Lindley v. Life Investors Ins. Co. of Am.*, Case No. 08-CV-379-CVE-PJC, N.D. Okla.) at 66, relevant excerpts attached hereto as Exhibit 4. Due to an oversight, Bankers United did not mail the BPC01OK endorsement to any Oklahoma policyholders in 1998.  *See id.* at 55-56.  Bankers United, however, has processed and paid actual charges benefits in accordance with the endorsements for BPC01OK policyholders.  *Id.* at 54-55. The endorsement was subsequently mailed to policyholders in January 2007.  *Id.* at 55.

C.      **The Non-Parties' Limited Involvement With The Oklahoma Insurance Department**

Effective November 1, 2006, Oklahoma enacted a statute which directly addresses specified disease policies that pay benefits based on the "actual charge" or "actual fee" for a service.  OKLA. STAT. ANN. tit. 36, § 3651 (2006).  The statute provides that "actual charge" means "the amount actually paid by or on behalf of the insured and accepted by a provider for services provided" (*id.*), which is consistent with Transamerica's claim procedures.  Following enactment of the "actual charges" statute, Life Investors retained outside counsel J. Angela Ables, who informed the Oklahoma Department that Bankers United had inadvertently failed to send out the endorsement to BPC01OK policyholders in 1998.  Ms. Ables corresponded with the Oklahoma Department about whether Bankers United could pay future claims under the BPC01OK policy in accordance with the definition of "actual charges" contained in the newly enacted statute.  *See* Ables Decl. ¶ 5.  Neither Ms. Ables nor her firm, Kerr Irvine, was involved in the communications with the Department in 1998 concerning the AE-BAC-OK endorsement. *See id.* ¶ 4.  The e-mails are limited to discussion between Ms. Ables and the Oklahoma Department regarding the Bankers United endorsement.  *See id.* ¶¶ 4-5.  The result of those communications was that the Oklahoma Department directed Bankers United to continue to pay claims on BPC01OK in accordance with the definition of "actual charges" contained in the AE-BAC-OK endorsement that was required by the Department in 1998.

After extensive briefing, and in light of undisputed evidence that no such "global agreement" existed, the *Lindley* court found that plaintiff's theory of an "Actual Charges Agreement" was not supported by any evidence and refused to infer the broad agreement suggested by the plaintiff between Life Investors and the Oklahoma Insurance Department.  *See Lindley*, Doc. 342 at 8 ("Lindley's contention is highly speculative, relying largely on

unsupported inferences."). The *Lindley* court accordingly rejected plaintiff's request for an enlargement of time to seek further discovery on the issue.[12]

As demonstrated herein, the Subpoenas seek irrelevant and privileged documents regarding communications with the Oklahoma Department of Insurance regarding Oklahoma policy forms.

## ARGUMENT

### I.    LEGAL STANDARD

In order to protect its own interests, a party is permitted to seek a protective order in response to a subpoena served on a non-party. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash."). Protective orders are governed by Rule 26(c) of the Federal Rules of Civil Procedure and allow the Court to "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

In ruling on a motion for protective order, the Court may consider whether the subpoena falls within the proper scope of discovery under the Federal Rules. *See Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) ("It is well settled . . . that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."). The scope of discovery is governed by Rule 26(b), which, among other things, places

---

[12] Unswayed by the district court's findings, Lindley refused to withdraw his subpoenas. The *Lindley* subpoenas were originally issued from the Northern District of Oklahoma where the action was pending. After the subpoenas were struck for having been issued from the wrong court, Lindley reissued the subpoenas from the Western District of Oklahoma where Ables and Kerr Irvine maintain their offices. The Non-Parties and Life Investors each filed motions to quash the subpoenas in the issuing court, but the motions had not been ruled on prior to settlement of the action.

limits on discovery on the basis of relevance and whether the discovery sought is unduly burdensome or obtainable from another, more convenient source. *See Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("As parties, Defendants clearly have standing to move for a protective order if the subpoenas seek irrelevant information."); *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 2007 WL 119148, at *3 (D. Nev. Jan. 9, 2007) (a party may "move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information").

## II.   THE SUBPOENAS SEEK ENTIRELY IRRELEVANT DOCUMENTS AND INFORMATION

### A.   Documents And Information Relating To The Oklahoma Insurance Department And Oklahoma Policy Forms Are Not Relevant To This Case

The documents and deposition testimony sought by plaintiff from Ables and Kerr Irvine relate solely to (1) 1998 communications between Bankers United and the Oklahoma Insurance Department regarding an endorsement to an Oklahoma cancer insurance policy form and (2) to 2006 communications between outside counsel and the Oklahoma Insurance Department regarding the future administration of claims on that policy form in light of the enactment of an Oklahoma statute defining "actual charges." Such information is entirely irrelevant to the facts and issues involved in this action.

Plaintiff Clark is a resident of Tennessee and filed this action in Arkansas. *See* Complaint ¶ 1 (Doc. 2). Clark's Policy was purchased and issued in Tennessee by PFL Life. Clark's policy form was approved and is governed by the Tennessee Department. Gwin Decl. ¶ 5.

Endorsements to *Oklahoma* policy forms and communications with the *Oklahoma* Insurance Department regarding application of an *Oklahoma* statute can have no bearing on the interpretation or administration of Clark's Tennessee Policy.   The Oklahoma Insurance Department cannot require Transamerica or its affiliates to issue an endorsement to or administer in a certain way a policy issued, delivered, and held in Tennessee.  *See* 1 Couch on Insurance § 2.7 (3d ed. 2010) ("Most states have statutorily empowered insurance boards, commissioners or similar officials to regulate and supervise the transaction of insurance business within the state in order to protect the public interest . . . ."); 1 Couch on Insurance § 2.8 ("The state department of insurance or other regulatory authority has the power and obligation to see that all laws respecting insurance and insurance companies of the respective state are faithfully executed."); OKLA. ADMIN. CODE § 365:1-1-3(1993) ("The Insurance Commissioner, as chief officer of the Insurance Department, is charged with the duty of administering and enforcing all provisions of the Oklahoma Insurance Code . . . .").   Regulation of policy forms filed in Tennessee falls exclusively within the province of the Tennessee Department.  *See* TENN. CODE ANN. § 56-7-101 (2005) ("it is unlawful for any company to make any contract of insurance upon or concerning any property or interests or lives in this state, or with any resident of this state . . . unless and except as authorized under this title").  The Oklahoma state statute defining "actual charges," and the administration of certain Oklahoma policy forms as a result of its enactment, has no effect on Clark's Tennessee Policy.   The Subpoenas seek no information relating to the Tennessee Department or Clark's policy form.

The discovery sought by the Subpoenas is entirely irrelevant to plaintiff's case, and the Motion for Protective Order should be granted.  *See, e.g.*, *Mayes v. City of Oak Park*, 2007 WL 187941, at *2 (E.D. Mich. Jan. 22, 2007) (granting motion for protective order where

documents requested in a subpoena are irrelevant to the claims and defenses encompassed within the case).

    **B.**      **Another Federal District Court Has Deemed The Basis For The Subpoenas Speculative**

    Counsel for plaintiff has twice issued identical subpoenas in an action involving a Life Investors cancer policyholder filed in the Northern District of Oklahoma. *See Lindley v. Life Investors Ins. Co. of Am.*, Case No. 08-CV-379-CVE-PJC (N.D. Okla.). Issues relating to the *Lindley* subpoenas were extensively litigated in that action.[13]

    In *Lindley*, counsel for plaintiff erroneously inferred from evidence obtained from Life Investors that an overarching "agreement" existed between the Oklahoma Insurance Department and Life Investors pursuant to which Life Investors was required to endorse all of its Oklahoma specified disease or cancer policies with a definition of "actual charges." *See Lindley*, Doc. 417 (Order) at 1, 5. Lindley sought discovery from Ables and Kerr Irvine to bolster that theory. Life Investors submitted undisputed evidence in the *Lindley* action demonstrating that such an "agreement" does not exist. *See, e.g.*, *Lindley*, Doc. 342 (Order), Doc. 363 (Response).

    Significantly, this issue was decided by the *Lindley* court in connection with the Court's hearing and ruling on plaintiff's motion for a 60-day enlargement of the deadline for the parties to conduct discovery. Plaintiff sought an enlargement of time to conduct additional discovery to obtain proof of the purported "agreement." *See Lindley*, Doc. 313 (Motion for Enlargement of Time). The Magistrate heard oral argument on plaintiff's motion and considered the "letters

---

[13] *See Lindley*, Doc. 313, 317, 329, 335, 344, 352, 353, 354, 360, 363, 386 & 417; *see also Lindley v. Life Investors Ins. Co. of Am.*, Case No. 10-CV-495-CVE-PJC (W.D. Okla.), Doc. 1, 3 & 19.

between various insurers and [Oklahoma Insurance Department] relating to various policies, including several that are not at issue in this case." *Lindley*, Doc. 342 at 7.

The *Lindley* court denied plaintiff's motion, refusing to infer the "broad agreement" suggested by the plaintiff between Life Investors and the Department. *See id*. at 7.  In denying plaintiff's motion for an enlargement of time, the *Lindley* court stated:

> The Court has reviewed the record evidence and finds it ***insufficient to establish the over-arching agreement Lindley would infer*** therefrom.  The notices and letters between OID and insurance companies in 1997-98 reflect concern over the meaning of the term "actual charges," but they do not establish that there was an agreement that required Life Investors to provide a specific definition of "actual charges" as a medical provider's billed, undiscounted amount in **all** of Life Investors insurance policies.  Lindley's contention is ***highly speculative, relying largely on unsupported inferences***.  Counsel indicated at the April 2, 2010 hearing that, in fact, Life Investors' corporate representative had testified the day prior that there was no such agreement.  Lindley interprets the various letters and e-mails between insurance companies and OID as sufficient evidence of such an agreement to allow him to widen the scope of discovery and extend it for two months.

*Lindley*, Doc. 342 at 7-8 (bold and italics emphasis added).  Lindley raised the issue again before the district court judge in a motion for reconsideration of the *Lindley* court's earlier summary judgment ruling, who reiterated the Magistrate's ruling:

> Plaintiff's policy would not have been affected by the alleged agreement, because plaintiff's policy was issued using form B[PC]530AR.  Plaintiff argues that the evidence implies that [Life Investors' parent company] agreed to amend every policy issued to an Oklahoma insured to include a definition of 'actual charges,' but plaintiff's argument is ***pure speculation and is not supported by the evidence***.

*Lindley*, Doc. 417 at 6 (emphasis added).

The fact that the basis for seeking the documents and information requested in the Subpoenas was deemed "speculative" in a case pending in Oklahoma and involving an Oklahoma policyholder and a putative Oklahoma class renders such discovery in this action even more inappropriate.

The documents and information sought in the Subpoenas are not relevant to and are not important to resolving the breach of contract, unjust enrichment, and bad faith claims relating to Clark's Tennessee Policy at issue in this action.  The information sought from Ables and Kerr Irvine is also irrelevant because there was no global "agreement" in 1998 to endorse all of Bankers United's and related companies' cancer policies in Oklahoma.  Rather, the Oklahoma Insurance Department required Bankers United to issue an endorsement on a single cancer policy form, the BPC01OK.  Even *if* such an "agreement" existed and was not premised on pure speculation, the information sought would still not be relevant in this action.  Clark does not own the BPC01OK or any other Oklahoma policy form, and communications with or directives of the Oklahoma Insurance Department have no bearing on the interpretation or administration of policies governed by the Tennessee Department, including Clark's.

## III.   THE SUBPOENAS IMPROPERLY SEEK PRIVILEGED MATERIAL

The Subpoenas also improperly seek information and documents protected from disclosure by the attorney-client privilege.[14]  Under Arkansas law, the attorney-client privilege protects from disclosure "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client" between a client and an attorney (or their respective representatives).  ARK. CODE ANN. § 16-41-502(b).[15]  The privilege belongs to the client and may be claimed by the client or on its behalf.  *See* ARK. CODE ANN. § 16-41-502(c).

---

[14] Certain documents sought are also protected by the attorney work-product doctrine because they involve communications between Ables, Life Investors, and Life Investors' outside litigation counsel, Jorden Burt LLP.  The work-product doctrine protects from disclosure documents "prepared in anticipation of litigation" (Fed. R. Civ. P. 26(b)(3)(A)) and "the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . . concerning the litigation" (Fed. R. Civ. P. 26(b)(3)(B)).

[15] In a diversity action, the attorney-client privilege is governed by state law.  *See* Fed. R. Evid. 501; *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000).

The attorney-client privilege is intended to encourage clients to communicate candidly and in confidence with their attorneys in order to obtain legal advice. *See Byrd v. State*, 929 S.W.2d 151, 153-54 (Ark. 1996); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Challenges to the assertion of privilege warrant careful consideration by the Court.

For these reasons, depositions of outside counsel are not favored. The Eighth Circuit has held that depositions of opposing counsel "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Plaintiff cannot establish any of these factors.

As explained herein (*infra*, Section IV), plaintiff has other means to obtain the information sought from Ables and Kerr Irvine. Plaintiff likewise cannot establish that the information sought is relevant to the claims and defenses at issue in this action or is crucial to the preparation of her case. Plaintiff does not own a policy form that contains a definition of "actual charges" or was governed by the Oklahoma Insurance Department.

Finally, plaintiff cannot establish that the entirety of the information sought is nonprivileged. Ms. Ables and her firm, Kerr Irvine, served as outside counsel to Life Investors in 2006 and provided the company with legal advice and services in connection with the Oklahoma Insurance Department regarding the effect of OKLA. STAT. tit. 36, § 3651 on the payment of future claims under policy form BPC01OK. The document requests, in large part, seek the production by Ables and the Kerr Irvine law firm of documents constituting confidential attorney-client communications. For example, to the extent each document request contained in the Subpoenas seeks production of documents "evidencing," "summarizing," and/or "describing"

certain agreements, meetings, or communications with the Oklahoma Insurance Department, it is seeking attorney-client communications.   Many of the responsive documents would consist of confidential, privileged communication between the non-party lawyers and their client, including legal advice, strategy, and analysis relating to communications with the Department and the application of the statute to endorsed policy forms.   To the extent the "topics for examination" seek testimony regarding the "substance and content" of privileged documents sought in connection with the "documents requested" (Topic No. 4), any responsive testimony would likewise be protected by the attorney-client privilege.

The information sought does not relate to the claims and defenses at issue in this action, and no legitimate reason exists for plaintiff to be seeking this information from Life Investors' outside counsel and to invade the attorney-client privilege.   This Court should thus enter a protective order prohibiting plaintiff from further harassing Ables and Kerr Irvine.

## IV.   PLAINTIFF HAS NOT SOUGHT TO OBTAIN THE INFORMATION BY LESS INTRUSIVE MEANS

Rule 26(b) places limits on discovery that can be obtained from a more convenient, less burdensome, or less expensive source.   Fed. R. Civ. P. 26(b)(2)(C)(i).   A district court may grant a motion for protective order on the ground that the information sought by a subpoena was obtainable by other, more convenient means.   *See G.K. Las Vegas*, 2007 WL 119148, at *5 (staying enforcement of subpoenas while court considered their proper scope, in part, because the court found "that there is a legitimate question whether relevant documents and information sought by the subpoenas are obtainable from Defendants or through some other sources or means that are more convenient, less burdensome, or less expensive"); *see also Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (holding that the district court could

properly require a party to seek discovery from its party opponent before burdening a non-party

with a subpoena and ancillary proceeding to enforce it).

Even if the documents were somehow deemed relevant (which they are not), plaintiff has

not made any effort to obtain any relevant and discoverable information from Transamerica.

Instead, the day after the *Lindley* case was settled, and before making any attempt to otherwise

seek any discovery from Transamerica, plaintiff's counsel once again issued his improper

subpoenas in this action.   Any relevant documents and testimony should first be sought from

Transamerica before burdening non-parties that have no interest in this litigation with subpoenas,

depositions, and document production.

Moreover, as plaintiff's counsel is aware from the *Lindley* filings, Ables and Kerr Irvine

had limited involvement in the issues identified in the Subpoenas.   Ables and Kerr Irvine were

retained in 2006 by Life Investors to confer with the Oklahoma Insurance Department regarding

the *future* administration of claims for "actual charges" benefits in Oklahoma under policy form

BPC01OK following the effective date of OKLA. STAT. tit. 36, § 3651 on November 1, 2006.

Ables Decl. ¶ 5. Neither Ables nor Kerr Irvine were involved in the 1998 filing of the

AE-BAC-OK endorsement or any communications with the Department prior to 2006 related to

the endorsement and they do not possess any relevant information that could not be obtained

through party discovery.   *See id.* ¶ 4.   There is thus no legitimate reason for plaintiff to seek

discovery from the Non-Parties that is available, to the extent it is relevant and discoverable,

from a party.

## CONCLUSION

For the reasons set forth above, and for good cause shown, the Court should enter a protective order precluding plaintiff from seeking testimony and documents from non-parties J. Angela Ables and Kerr, Irvine, Rhodes & Ables, P.C.

## CERTIFICATION OF COUNSEL

Undersigned counsel certifies that counsel for Transamerica has conferred with opposing counsel in a good faith effort to resolve this dispute without court action, but was unable to reach an agreement.

Respectfully submitted,

*/s/ John K. Baker*
John K. Baker
Arkansas Bar No. 97024
**MITCHELL, WILLIAMS, SELIG,**
 **GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas  72201
Telephone:  (501) 688-8800
Facsimile:  (501) 688-8807
jbaker@mwlaw.com

and

Markham R. Leventhal
Farrokh Jhabvala
**JORDEN BURT LLP**
777 Brickell Avenue, Suite 500
Miami, Florida  33131
Telephone:  (305) 371-2600
Facsimile:  (305) 372-9928
ml@jordenusa.com
fj@jordenusa.com

*Attorneys for Transamerica Life*
*Insurance Company*

-17-

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 16, 2010, Transamerica Life Insurance Company's Motion for Protective Order from Subpoenas Directed to J. Angela Ables and Kerr, Irvine, Rhodes & Ables, P.C. and Incorporated Brief in Support was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Tony Gould, Esq.
Brown & Gould, PLLC
701 North Broadway, Suite 510
Oklahoma City, Oklahoma  73102
Telephone:  (405) 235-4500
Facsimile:  (405) 235-4507
tgould@browngouldlaw.com

James F. Swindoll, Esq.
Law Offices of James F. Swindoll
212 Center Street, Suite 300
Little Rock, Arkansas  72201
Telephone:  (501) 374-1290
jswindoll@swindolllaw.com

_____*/s/ John Baker*_____